DECISION
Plaintiff appeals Defendant's Notice of Proposed Adjustment denying the child care credit and working family credit claimed for 2007. A trial was held November 10, 2008, in the courtroom of the Oregon Tax Court in Salem, Oregon. Plaintiff appeared and testified at the trial. Testifying for Plaintiff was Linda Milam (Milam). Defendant was represented by Jared Houser, an auditor with the Department of Revenue (department).
 I. STATEMENT OF FACTS
Defendant issued a Notice of Proposed Adjustment on March 10, 2008, for the 2007 tax year. That adjustment denied Plaintiff's claim to the child care credit and the working family child care credit. Plaintiff filed a written objection, but Defendant found that the documentation it received on March 17, 2008, was inadequate to substantiate the claimed child care payments, and sent a Notice of Refund Denial on March 31, 2008. Plaintiff timely appealed.
At trial, Plaintiff testified that Milam (Plaintiff's mother) provided child care for Plaintiff's two children while she worked a swing shift, from 3:00 p.m. until 9:30 p.m., Tuesdays through Saturdays in 2007. Plaintiff testified that the father of the children had custody every other weekend, and that he lived in Sweet Home, Oregon. Plaintiff testified that she paid her mother $200 per month on the 20th of each month to care for her two children, who were in the *Page 2 
first and third grades in 2007. Plaintiff stated that she paid in cash and that Milam wrote receipts at the time of payment. Plaintiff explained that the payments were always on the 20th because that was the parties' agreement and because Milam lived approximately 10 minutes by car from Plaintiff's home, which made it convenient for her to pay on the 20th regardless of the day of the week.
Milam testified that she picked the children up after school at 2:55 p.m. on Tuesdays, Wednesdays, and Fridays, and after school at 1:55 p.m. on Thursdays. In addition, Milam testified that Plaintiff dropped the children off at her house on Saturdays, on Plaintiff's way to work, shortly before 3:00 p.m. Milam stated that the agreement does not vary in the summer months when the children are not in school because she still begins watching them shortly before 3:00 p.m. when Plaintiff goes to work. Milam testified there was no written contact, but that they had an oral agreement that Plaintiff would pay $200 on the 20th of each month and Milam would write a receipt for the cash payment at that time. Plaintiff reported total expenses for the year of $2,400. Based on those expenses, and her income in 2007, Plaintiff reported a child and dependent care credit of $720 and a working family credit of $960.
In addition to the sworn testimony of Milam, Plaintiff submitted an undated statement that was signed by Milam stating that "[she] receive[d] $200 cash, monthly, from Terri Carter, for the childcare of [her children]." Plaintiff also submitted copies of twelve receipts, one for each month of 2007, that were signed by Milam and included a notation that $200 was received from Terri Carter "for daycare." Plaintiff did not provide any bank records to corroborate the alleged payment schedule, and Milam did not file an income tax return for 2007, reporting that income.
Defendant contends that the documents provided by Plaintiff are inadequate to substantiate the alleged payments because it is a transaction between related parties and there *Page 3 
was no written contract. Houser stated that the department was unable to trace the alleged payments without third-party corroborating documents to verify the alleged payments.
 II. ANALYSIS
Oregon allows a qualifying taxpayer to claim a refundable credit to partially offset the taxpayer's child care costs incurred when a taxpayer is working or attending school. ORS 315.262.[1] That credit is commonly referred to as the working family credit (WFC). The statute provides in relevant part:
 "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS Chapter 316
equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)."
ORS 315.262(2).
In addition to the WFC, ORS 316.078 provides for a nonrefundable credit for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependant child or children. That credit is commonly referred to by the short title "child care credit" (CCC). The CCC is specifically tied to Internal Revenue Code (IRC) section 21, the pertinent language being that the amount of the credit is "equal to a percentage of employment-related expenses allowable pursuant to section 21
of the Internal Revenue Code." ORS 316.078(1). IRC section 21(1), in turn, provides for a partial credit for "employment-related expenses * * * paid by such individual during the taxable year."
To receive either credit, a taxpayer must pay for child care, and the care must be necessary to enable the taxpayer to work (or, in the case of the WFC, attend school). Plaintiff claimed both a CCC and WFC. Defendant disallowed both credits for what it deemed a lack of adequate substantiation. *Page 4 
In CCC and WFC cases, where payment is made in cash and the provider is a friend or relative of the taxpayer, the sworn testimony of the child care provider is critical. Bello v. Dept. of Rev., TC-MD No 060020B, WL 1460903 (May 8, 2007); Marks v. Dept. of Rev., TC-MD No 070124E (May 11, 2007); Rodriguez v. Dept. of Rev., TC-MD No 050651C, WL 2614534 (Oct 12, 2005). Here, the case turns on a question of fact, hinging on the credibility of Plaintiff and Milam. Plaintiff must persuade the court by a preponderance of the evidence that she paid $200 each month for child care. See ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971) (citation omitted).
In Marks, the taxpayers were denied the credit for failure to meet the statutory burden of proof provided in ORS 305.427. The taxpayers paid cash for the alleged child care expenses and had no receipts or canceled checks. They reported substantial child care payments ($13,000), the testimony about those payments was vague ("about $100 or $200 per week"), and the alleged provider not only failed to testify, but was unavailable to Defendant prior to trial for any confirmation. Marks, TC-MD No 070124E at 2. The taxpayers did have a letter from the alleged provider. The court ruled that a provider letter, by itself, was insufficient evidence to satisfy the statutory burden of proof. In such cases, stated the court, the provider should testify.
In Rodriguez, the court upheld the department's disallowance of the credit because there was no independent proof of child care payments (e.g., cancelled checks, provider receipts), the provider did not testify, and the plaintiff's wife did not work, a requirement under the applicable administrative rule for married couples. See OAR 150-315.262(3)(b)(C).
The plaintiff in Gibson v. Dept. of Rev., TC-MD No 060399C, WL 900764 (Mar 23, 2007) was more successful. In Gibson, this court allowed a majority of the plaintiff's claimed expenses because there was proof of childcare payments in the form of cancelled checks and *Page 5 
provider receipts, and the witnesses, taxpayer and her mother, were found by the court to be credible. The payments were made by the plaintiff's mother to various commercial child care providers, and plaintiff reimbursed her mother in cash. The central issue in Gibson was not whether payments were made but, rather, who made them.
Turning to the present case, Plaintiff and her provider/mother, Milam, traveled a considerable distance for the trial and testified under oath. The record includes their testimony, monthly receipts signed by Milam, and a written statement signed by Milam. Both Plaintiff and Milam testified about the amount and nature of the payments made, which totaled $2,400 for the year. Both witnesses were candid and credible, and their testimony did not conflict in any manner.[2] No contradictory evidence was presented. The case is, therefore, distinguishable from Marks andRodriguez, and more in line with the facts in Gibson. The court finds that the weight of the evidence establishes that Plaintiff paid for child care in cash, in the amount of $2,400, in 2007.
Defendant is concerned with the lack of independent corroborating evidence and Plaintiff's relationship with her provider, who is also her mother. An Oregon Administrative Rule (OAR) applicable to the WFC provides that deductible costs do not include "[t]ransactions that are not arm's-length or have no economic substance." OAR 150-315.262(3)(b)(F). Defendant appears to interpret the rule as establishing, at the very least, a rebuttable presumption operating against the taxpayer in any case in which the taxpayer and the provider are related. While that approach may be appropriate in screening returns at the administrative level (i.e., the *Page 6 
Department of Revenue), [3] such a narrow construction of the term "arm's-length" is not supported by the rule[4] and would be inappropriate for the court. The court must weigh all of the evidence and determine the credibility of the witnesses in arriving at its decision. Were it otherwise, there would be no point in a trial — the court could simply make a decision based on the written documentation. That would clearly be inappropriate. Transactions between related parties rightly generate heightened scrutiny, because of the increased potential for favorable treatment (e.g., leniency when the taxpayer cannot afford some or all of the amount due), and a greater motivation and willingness to testify untruthfully (i.e., lie to "help" a family member) about the amount (if any) actually paid. Nonetheless, related parties can, and do, deal at arm's-length.
 III. CONCLUSION
On the evidence before it, the court concludes that Plaintiff paid Milam $200 per month for each month of 2007. Plaintiff is entitled to the child care credit and working family credit, based on total expenses that year of $2,400. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted; and *Page 7 
IT IS FURTHER DECIDED that Defendant shall redetermine Plaintiff's tax liability for 2007 based on the court's decision herein.
Dated this _____ day of April 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on April 30, 2009.The Court filed and entered this document on April 30, 2009.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.
[2] Conflicting evidence, either testimonial or documentary, is common in cases where the facts are misrepresented to the court. See, e.g.,Briggs v. Department of Revenue, TC-MD No 070700E, WL 352307 *2 (Jan 30, 2008), where the taxpayer's written documentation conflicted, the receipts showing $200 payments on the 5th and 20th of each month, and a document titled "Record of Payments" reflecting a single $400 payment each month on the 20 th .
[3] Such an approach is at least administratively convenient. However, the court is not endorsing such a practice if, in fact, it is how the department operates.
[4] The rule merely precludes non-arm's-length transactions from being deductible. *Page 1